**Roy Hobbs**
**9332 Sea Parrot Circle, Anchorage, AK 99515**
**907-887-6559**
royahobbs@hotmail.com
*Plaintiffs, Pro Se*



APR 24 2026

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ROY HOBBS,** ) | Case No. _3:26-CV-00176-ACP_ |
| ) | |
| on behalf of **N.I.**, a minor child ) | **IDEA ADMINISTRATIVE APPEAL** |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| **ANCHORAGE SCHOOL** ) | |
| **DISTRICT** ) | |
| ) | |
| Defendant | |

### IDEA ADMINISTRATIVE APPEAL COMPLAINT

Comes now Plaintiff, Roy Hobbs, pro se, and alleges and complains as follows:

1. This Court has jurisdiction over this action pursuant to 20 U.S.C. §1415(i)(2)(A), and seeks to power relief pursuant to 20 U.S.C. § 1415(i)(2)(C).

2. The plaintiff is Roy Hobbs, the father of the student, and the party aggrieved in this matter. The student is a disabled student who attended Anchorage School District from years 2022 through 2026.

3. Defendant is Anchorage School District ("ASD"), the school District the student was enrolled in.

4. Venue in Alaska is proper under 28 U.S.C. §1391(b).

1

5. Plaintiff is a party aggrieved by the findings and decision made by the hearing officer and has the right to bring this civil action to challenge that decision. This civil action is filed in a timely matter because the final order was submitted on March 26, 2026 via email to parties.

6. On February 6, 2026, the Parents of N.I. Submitted written notice of an expedited Due Process complaint to DEED regarding (1) **the student was constructively (page 3 paragraph 3 of initial complaint) excluded from ASD Feb-March 2026, preventing evaluation and educational opportunities** ; (2) **the student required an evaluation ASD wasn't currently providing** (page 5 section II (1) 'failure to evaluate of initial complaint) (3) **ASD failed its duty to adhere to the student's medical record; (4) because the student was not found, the student suffered an injury; (5) immediate danger for failure to find the student, failure to adhere to student medical providers relevant to the student's Disabilities; (6) the prior due process failed the student and did not provide a valid due process proceeding.** This complaint included (a) direct evidence or disabilities; (b) proposed resolutions; (c) witness list. The hearing officer failed to adjudicate this through due process hearing, and throughout the proceeding plaintiffs maintained that she had been (1) constructively excluded, delaying evaluation; (2) ASD wasn't evaluating the "whole" child; (3) ASD continued to fail to consider the student's relevant information on her disabilities); (4) and (5) the student was injured and her disabilities not considered as relevant information; (6) the record of the prior due process failure which was validated by the hearing officer's actions.

2

7. The hearing officer erred in several legal determinations made in the decision and in the application of facts to the law on various issues in this matter, therefore prejudicing the Plaintiffs rights to the student's educational property.

8. The hearing officer failed to review the entire record prior to his dismissal, as prior requests of (1) **evaluation requests** (2022-2026); (2) **student disabilities**; (3) **attempted collaboration**; (4) **prima facie evidence of the due process complaint**; (5) **unfavorably evidence pertaining to ASD**.

9. The hearing officer failed to adhere to his scheduling order, therefore causing discrepancies in the timelines of evidence.

10. The hearing officer applied the incorrect legal and factual definition of a Communication Evaluation, Functional Behavioral Health Assessment Evaluation, Assistive Technology, and mobility supports. The correct definitions are **20 U.S.C. § 1414(b)** (evaluation accordance with this section, rules defined) specifically:

    a. **20 U.S.C. § 1414(b)(1)** (notice);

    b. **20 U.S.C. § 1414(b)(2)(A)** (variety of tools);

    c. **20 U.S.C. § 1414(b)(2)(B)** (not a single measure);

    d. **20 U.S.C. § 1414(b)(2)(C)** (technically sound);

    e. **20 U.S.C. § 1414(b)(3)(A)(ii)** (administered to yield accurate information);

    f. **20 U.S.C. § 1414(b)(3)(A)(iii)** (measures valid and reliable);

    g. **20 U.S.C. § 1414(b)(3)(A)(iv)** (trained and knowledgeable personnel);

    h. **20 U.S.C. § 1414(b)(3)(A)(v)** (instructions of the producer);

    i. **20 U.S.C. § 1414(b)(3)(B)** (all areas of suspected disability); and

    j. **20 U.S.C. § 1414(b)(3)(C)** (relevant information for educational needs).

3

11. **The record shows that parents were attempting to navigate these legal complexities as pro se, to summarize their complaint in terminology required for adjudication in a due process hearing (evidentiary trial). The parents laid the groundwork for this argument and provided notice. ASD cannot change the past on invalidating the student's disabilities, which has prejudiced parents claim on her educational property.**

12. The hearing officer applied the incorrect legal and factual definition of "actively evaluating". This came after he verified himself that the student was constructively excluded from the school building and that she did not have an evaluation schedule for Adaptive PE, Cognitive, Learning, OT, PT, Social/Emotional. By his final order, no evaluation schedule was arranged, scheduled, or conducted to which he was provided notice of, even though he specifically asked for an educational planning March 4, 2026.

13. By the final order of the hearing officer, no plan nor consent form for (1) **Communication Evaluation**, and (2) **Functional Behavioral Assessment Evaluation**, were provided to the parents. Instead, he committed to the decision—prior to allowing a trial and plaintiffs due process rights—that the student simply did not need to be evaluated.

14. The hearing officer canceled the evidentiary hearing on March 23, 2026, prior to the end of the day.

15. The Hearing Officer erred by allowing the District to satisfy its notice requirements through "selective disclosure." By failing to hold an evidentiary hearing, the Hearing Officer prevented the Plaintiffs from proving that the Prior Written Notices were not serviced to parents, and only submitted pursuant to **34 CFR § 300.508(e)(1)**—*"If the LEA has not sent a prior written notice under § 300.593 to the parent regarding the subject matter contained*

4

*in the parent's due process complaint, the LEA **must**, within 10 days of receiving the due process complaint, send to the parent a response ....."*

16. The above error prevented the cross examination of witnesses to complete the administrative record, which would have productively added to the administrative record. The error further prevented the live cross examination of exhibits.

17. The decision to grant a summary dismissal on plaintiffs claims (tolling the statute of limitations) which required to be confronted and cross examined as factual disputes were on record (parents didn't get it) was an error on the Hearing Officer's order, prejudicing the student from past and current claims she would have otherwise been eligible to dispute.

18. Furthermore, the notice of vacating the hearing impeded on plaintiff rights to notice in a due process proceeding, as the final notice came prior to the deadline of the scheduling order's final exhibit deadline which would have verified the discrepancies in the notices ASD presented. Providing additional evaluation requests would have been cumulative because the district was legally required to provide notice of them in the lower proceeding, and would not have adjudicated the matter on *if* the parents received the notices.

19. The hearing officer erred by failing to adhere to the lower-standard of required for the dismissal period, and applied the incorrect legal standard of preponderance of the evidence prior to admitting the very evidence required to adjudicate the claims. In addition, he failed to provide proper notice of the dismissal, as plaintiffs were already entitled to the 5-day evidence submission rule. Therefore, violating plaintiff rights under:

    a. **20 U.S.C. § 1415(b)(6)** (the right to present a complaint regarding "any matter" relating to identification, evaluation, or placement);

    b. **20 U.S.C. § 1415(c)(2)** (due process complaint notice requirements);

5

c. **20 U.S.C. § 1415(f)(1)(A)** (the right to an impartial due process hearing);

20. Because the administrative record contained factual disputes, the natural course of action would have been to maintain the trial date and allow for the record to be complete. The hearing officer failed to allow plaintiff from exercising due process rights by (1) **limiting the administrative record**; (2) **failing to take claims as true during the dismissal stage**; (3) **preventing the cross examination of the record and witnesses.**

21. The IDEA Due Process is based off of (1) **notice** and (2) **resolution.**

22. By adjudicating the claims without proper notice and basing a final order on the incorrect standards of (a) *res judicata*; (b) barred by the statutes of limitations; (c) premature; (d) not within jurisdiction; the hearing officer failed to verify the student has received FAPE. The claims were not on whether or not the student was eligible (eligibility claim), but on the student's educational property of (1) **being assessed as a whole**; (2) **being assessed in a valid evaluation**; (3) **being provided more than one form and one toolset to be evaluated**; (4) **ASD's adherence to their own Prior Written Notice that parents based their consent to (the inclusion of Assistive Technology and Mobility Supports).**

23. The hearing officer was placed on notice that the Prior Written Notice included Assistive Technology and Movement Supports, which is a district self-authenticating document that verifies he *does* have jurisdiction over the claims of AT/movement supports. Despite this, he ignored the weight of the evidence.

24. The Hearing Officer's Final Order contradicts his own prior notices and scheduling orders, demonstrating a lack of impartiality. By acknowledging the legal merits of the Plaintiff's claims during the development of the case and subsequently ignoring those same merits to grant a dismissal with prejudice o the bass of #23, the Hearing Officer failed in his duty to

6

provide a neutral and fair administrative proceeding, therefore adding to the dangers of the student not being 'found'.

25. The Hearing Officer erred by re-characterizing the student's disability-related exclusion as a "proposed resolution." By acknowledging the student's inability to attend school due to disabilities, yet failing to adjudicate the resulting "constructive exclusion," the Hearing Officer knowingly ignored the District's failure to provide a Free Appropriate Public Education (FAPE).

26. The Hearing Officer's Final Order is a "pre-textual" dismissal that ignores the evidence of "Child Find" violations he was placed on notice of throughout the case, including the bone fracture and the withholding of Prior Written Notices (PWN), effectively acting under the color of law to deprive the student of her educational rights.

27. The Hearing Officer erred by disregarding material evidence conjoined to the complaint, including the student's neuropsychological evaluation and proof of diagnosed disabilities (**ADHD, Anxiety, Emotional Lability, SLD, and Intellectual Disabilities; fracture; mental health crisis**). By acknowledging these documents existed but refusing to allow testimony to explain their relevance to the student's need for a Functional Behavioral Assessment (FBA) or a Communication Evaluation, the Hearing Officer reached a factual conclusion on an incomplete record.

28. The Hearing Officer abandoned his statutory duty to adjudicate the matter after exhausting the record. While the Final Order demonstrates that the Hearing Officer

7

understood the substance of the Plaintiff's complaint, he chose to "pre-adjudicate" the merits and block the evidentiary process and the right to a decision based on a fully developed administrative record.

29. The Hearing Officer erred by applying a "**sufficiency**" standard to the Plaintiff's **proposed resolutions** rather than the underlying legal claims. The IDEA requires a Hearing Officer to adjudicate whether a student was denied a **Free Appropriate Public Education** (FAPE); by focusing on whether he personally could have approved of the Plaintiffs' requested remedies (such as excusing absences to allow an evaluation at home), he failed to address the District's underlying failure to "find" and evaluate the student.

30. The Hearing Officer applied an incorrect legal standard regarding disciplinary procedures and "constructive exclusion." By acknowledging that the student remained at home due to disability-related needs and medical certification that was self-authenticated by ASD's own records, yet failing to adjudicate the District's refusal to provide a multi-form evaluation or FAPE during that period, the Hearing Officer ignored that the student was effectively excluded from her educational property. This constructive exclusion triggered disciplinary protections and "Child Find" obligations that the Hearing Officer failed to enforce. This would have been addressed and adjudicated accordingly with an evidentiary trial (due process proceeding).

31. The Hearing Officer erred by applying an incorrect legal standard to the District's "one-form" evaluation requirement for a medically homebound student. By ruling

8

that the student's physical and mobility needs were outside of his jurisdiction, he failed to recognize that the District's refusal to modify the evaluation format constituted a discriminatory barrier that resulted in a total cessation of the student's education.

32. The Hearing Officer erred by prejudicing the Plaintiffs to a higher standard of proof than "minimum sufficiency" pursuant to the IDEA during the dismissal stage. The Hearing Officer's determination that the claims were "premature" or "already decided" ignored the fact that the District's continuous failure to provide a valid and whole evaluation created a new and ongoing injury and educational loss that required a hearing on the merits.

33. The Hearing Officer committed a structural error by vacating the trial fourteen (14) days in advance, without first allowing the natural course of the evidence to be admitted, and dismissing the case prior to the established March 30, 2026 evidence deadline, depriving the Plaintiff of a meaningful opportunity to be heard in a "**meaningful manner.**"

34. The Hearing Officer committed a reversible error by violating the procedural reliance created by his own Scheduling Order. By establishing a March 30, 2026 deadline for final exhibits and an April 6–7 hearing date, the Hearing Officer induced the Plaintiffs to rely on those dates to meet their burden of proof. Dismissing the case on March 26—four days prior to the evidence deadline— constituted an unfair procedural trap that denied Plaintiffs the opportunity to establish their claims by a preponderance of the evidence.

9

35. The Hearing Officer committed a reversible error by failing to exhaust the administrative record and denying the Plaintiffs the opportunity to present documentary evidence and testimony, effectively rendering the Final Order a legal nullity. As a dismissal is not based on the preponderance of the evidence, he was required to exhaust the record fully before adjudicating.

36. The Hearing Officer applied an inconsistent and contradictory legal standard regarding jurisdiction and res judicata. The Hearing Officer barred Plaintiffs' claims under the doctrine of res judicata, which requires a prior final judgment on the merits. However, the Hearing Officer simultaneously asserted that the prior case (26-07) was dismissed for a lack of subject matter jurisdiction. Under established law, a dismissal for lack of jurisdiction is not an adjudication on the merits and cannot serve as a basis for res judicata.

37. The Hearing Officer erred by depriving the Plaintiffs of their right to cross-examine District witnesses, which was necessary to resolve "two stories" regarding whether required notices were ever sent and to prove the District failed to consider the student's specific disabilities (ADHD, Anxiety, Emotional Lability, SLD, and Intellectual Disabilities) through relevant information.

38. The Hearing Officer committed a reversible error by issuing what amounted to a **summary judgment** on the merits of the (1) Functional Behavioral Assessment (FBA) and (2) Communication requests, which he was provided notice of by the complaint, without conducting an evidentiary trial or allowing for a developed factual record.

39. The Hearing Officer erred by failing to address or investigate evidence of witness tampering, intimidation and retalation exercise of rights by the District (*"This situation is a perfect example of why litigation is such a terrible tool for solving education-related concerns. We were required by Alaska code and Mr. Lebo's orders to submit our answers and our motion to dismiss yesterday. This is not the district's "choice" to litigate—it is required by the rules and it is what lawyers are assigned to do."* From ASD Counsel, 2/24/26, on response to the use of Assistive Texhnology from the student's medical provider).

40. Arguably, #40 *proves* that the district does not respect the use of Assistive Technology, which Plaintiffs were planning to submit as evidence (confirmation from the provider of the use of Assistive Technology as an accommodation). This would have assisted Plaintiffs in their claim that Assistive Technology was ignored.

41. Plaintiffs submitted video proof of movement supports removed during the evaluation period.

42. The hearing officer did not allow the admission of these evidences which would have assisted the plaintiffs claims.

43. By dismissing the case prior to the evidentiary hearing and the evidence deadline (and admitting evidence), the Hearing Officer allowed the District to avoid accountability for the violations, thereby obstructing the Plaintiffs' ability to present a full and fair case and prejudicing the student from all past and future claims.

11

**44.** The plaintiff exhausted all attempts to expand the record during the lower proceeding, which is why an appeal is necessary in a de novo standard and "additional evidence" as the hearing officer committed the above errors.

Wherefore, the Plaintiffs prays this court enter judgement in its favor against the defendants by awarding the following relief:

1. Declaring the hearing officer erred in the legal determinations made in the decision and in the application of facts to the law on various issues in this matter.

2. Vacating the determinations made by the hearing officer.

3. Admitting evidence that was excluded in this proceeding under "additional evidence" under a de novo review for this appeal.

4. Order a writ with instructions for a remand, to include a full state evidentiary trial on the merits.

5. Order compensation education and relief for the student.

6. Reimbursement for the cost of filling and other financial relief as deemed appropriate.

7. Any other relief the court may determine is appropriate.


Dated April 24, 2026.

_Roy Hobbs, Plaintiff pro se_